**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**TATIANA AFANASSIEVA et al.,**

                            **5:20-cv-1109**
                **Plaintiffs,**        **(GLS/TWD)**


        **v.**


**PAGE TRANSPORTATION, INC.**
**et al.,**


                **Defendants.**
_____

**APPEARANCES:**                    **OF COUNSEL:**

**FOR THE PLAINTIFFS:**
Vladimir Tsirkin and Associates, PA    VLADIMIR TSIRKIN, ESQ.
1001 N. Federal Highway
Ste 244
Hallandale, FL 33009


**FOR THE DEFENDANTS:**
Marshall Dennehey Warner        HAROLD L. MOROKNEK, ESQ.
Coleman & Goggin            NADIA E. NIAZI, ESQ.
287 Bowman Avenue
Suite 404
Purchase, NY 10577

**Gary L. Sharpe**
**Senior District Judge**

<u>**MEMORANDUM-DECISION AND ORDER**</u>

**I.  <u>Introduction</u>**

Plaintiffs Tatiana Afanassieva and Arthur Kukuyev commenced this

diversity action against defendants Page Transportation, Inc. and Michael

Montague alleging claims of negligence and loss of consortium against

both defendants, as well as claims of respondeat superior and negligent

hiring, supervision, training, and retention against Page.  (Compl., Dkt.

No. 1.)  Pending before the court is defendants' motion to dismiss.[1]  (Dkt.

No. 9.)  For the reasons that follow, the motion is granted.

## II.  __Background__[2]

Page is a New York corporation with its principal place of business in

New York.  (Compl. ¶ 3.)  Montague is a citizen and resident of

Pennsylvania.  (*Id.* ¶ 4.)  Afanassieva and Kukuyev are both citizens and

residents[3] of New Jersey.  (*Id.* ¶¶ 5-6.)

On the morning of April 5, 2018, Afanassieva was driving her car in

the right lane of the highway.  (*Id.* ¶¶ 9, 11.)  At the same time, Montague

was driving a "semi-trailer truck," owned by Page, in the center lane of the

---

[1]  For future reference, the court refers defendants to N.D.N.Y. L.R. 10.1(a)(2), which states that "[a]ll pleadings, motions, and other documents that a party presents for filing . . . must have one-inch margins on all four sides of the page."

[2]  The facts are drawn from plaintiffs' complaint, (Dkt. No. 1), and presented in the light most favorable to them.

[3]  Plaintiffs allege in their opposition and supporting documents that Afanassieva is also a resident of New York.  (Dkt. No. 10 at 11; Dkt. No. 10, Attachs. 5-6.)  The validity of this claim is addressed below.  *See infra* Part IV.B.

same highway.  (*Id.* ¶¶ 10, 12, 15.)  When Montague attempted to change lanes, he struck Afanassieva's vehicle, forcing it off the road where it collided with a "No Turns" sign.  (*Id.* ¶¶ 7, 13.)

As a result of the collision, Afanassieva suffered injuries to her neck, back, left knee, arms, and legs, causing her to "bec[o]me sick, sore, lame and disabled" and "suffer[] . . . [from] great mental and physical pain, mental anguish[,] and bodily injuries."  (*Id.* ¶¶ 16-17.)  She has had to undergo various medical care and treatment, which will continue "for some time to come."  (*Id.* ¶ 18.)  Further, Afanassieva has been "unable to attend to [her] usual duties and occupation for some time and . . . will be unable to do so or limited from doing so permanently or for some time in the future."  (*Id.* ¶ 19.)  She "has incurred medical expenses, loss of income and other expenses and . . . will continue to incur such expenses permanently or for some time in the future."  (*Id.* ¶ 20.)  Kukuyev has "suffered from loss of society and consortium as a result of the injuries to his wife."[4]  (*Id.* ¶ 25.)

Plaintiffs commenced this action on September 15, 2020.  (Compl.)  Defendants moved to dismiss the complaint pursuant to Fed. R. Civ. P.

---

[4]  Plaintiffs seek to amend their complaint and remove this cause of action, as they claim Kukuyev is not actually Afanassieva's husband.  (Dkt. No. 10 at 22.)  However, this distinction has no bearing on the instant motion.

12(b)(2) and/or 12(b)(6), arguing personal jurisdiction of Montague is lacking, and that, in any event, plaintiffs' complaint does not state a claim upon which relief can be granted as to either defendant because the claims are time-barred.  (*See generally* Dkt. No. 9, Attach. 1.)

### III.  Standards of Review

### A.  Motion to Dismiss for Lack of Personal Jurisdiction

"When responding to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 171 F.3d 779, 784 (2d Cir. 1999) (citation omitted).  In assessing such a motion, a court may consider materials outside the pleadings.  *See Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 86 (2d Cir. 2013); *see also Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) ("[A] district court has considerable procedural leeway. It may determine the motion on the basis of affidavits alone; or it may permit discovery in aid of the motion; or it may conduct an evidentiary hearing on the merits of the motion." (collecting cases)).

However, prior to the completion of discovery, "the plaintiff's prima facie showing [of personal jurisdiction] may be established solely by

allegations." *Dorchester*, 722 F.3d at 85 (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.2d 194, 197 (2d Cir. 1990) (rejecting proposition that defendant may, on a Rule 12(b)(2) motion, refute plaintiff's unsupported allegations with specific testimonial evidence regarding fact essential to personal jurisdiction)); *see Hollins v. U.S. Tennis Ass'n*, 469 F. Supp. 2d 67, 70 (E.D.N.Y. 2006) ("Plaintiffs may rely entirely on allegations of fact, and they will prevail even if the moving party makes contrary allegations which controvert their prima facie case." (citations omitted)).

In deciding whether a plaintiff has made a prima facie showing of jurisdiction, the court "construe[s] the pleadings and affidavits in the light most favorable to plaintiffs, resolving all doubts in their favor." *Chloé v. Queen Bee of Beverly Hills, LLC*, 616 F.3d 158, 163 (2d Cir. 2010) (citation omitted).  However, the plaintiff "must make allegations establishing jurisdiction with some factual specificity and cannot establish jurisdiction through conclusory assertions alone." *Cont'l Indus. Grp. v. Equate Petrochemical Co.*, 586 F. App'x 768, 769 (2d Cir. 2014) (internal quotation marks and citation omitted); *see DeLorenzo v. Ricketts & Assocs., Ltd.*, 15-CV-2506, 2017 WL 4277177, at *5 (S.D.N.Y. Sept. 25, 2017) ("[C]onclusory non-fact-specific jurisdictional allegations or a legal

5

conclusion couched as a factual allegation will not establish a *prima facie* showing of jurisdiction." (citations omitted)); *SODEPAC, S.A. v. CHOYANG PARK*, No. 02 Civ. 3927, 2002 WL 31296341, at *5 (S.D.N.Y. Oct. 10, 2002) ("Vague and generalized allegations . . . are insufficient to make a prima facie showing of jurisdiction over an out-of-state defendant." (citations omitted)).

**B.     Motion to Dismiss for Failure to State a Claim**

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the governing standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

## IV.  Discussion

Defendants allege that personal jurisdiction over Montague is improper under N.Y. C.P.L.R. 301 and 302, and that, regardless, the complaint must be dismissed because the statute of limitations for the claim has run.  (*See generally* Dkt. No. 9, Attach. 1.)  For the reasons stated below, the court need not reach a conclusion regarding personal jurisdiction under N.Y. C.P.L.R. 301 because personal jurisdiction over Montague is proper under N.Y. C.P.L.R. 302.  In any event, plaintiffs'

6

claims are time-barred, and, thus, the complaint is dismissed.

## A.   Personal Jurisdiction

To make a prima facie showing of personal jurisdiction, a plaintiff must demonstrate: (1) procedurally proper service of process upon the defendant; (2) "a statutory basis for personal jurisdiction that renders such service of process effective"; and (3) that "the exercise of personal jurisdiction comports with constitutional due process principles." *Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012).

Defendants argue that there is no applicable jurisdictional basis that would allow New York to exercise personal jurisdiction over Montague.[5] (Dkt. No. 9, Attach. 1 at 16-25.)  Specifically, they assert that the motor vehicle accident giving rise to the present action occurred in New Jersey; that "[a]t all relevant times, . . . Montague has been [a] Pennsylvania resident," living and working in Pennsylvania; that Montague never maintained a residence or domicile in New York; and, that Montague has never conducted business in New York.  (*Id.* at 2, 16-25.)

---

[5]  Personal jurisdiction is not in dispute with respect to Page.  (*See generally* Dkt. No. 9, Attach. 1.)

1.  *N.Y. C.P.L.R. 301*

Plaintiffs allege that N.Y. C.P.L.R. 301 provides a basis for this court to exercise personal jurisdiction over Montague.  (Dkt. No. 10 at 13-17.) N.Y. C.P.L.R. 301 provides that "[a] court may exercise such jurisdiction over persons, property, or status as might have been exercised heretofore."  N.Y. C.P.L.R. 301.  "The comments to [N.Y. C.P.L.R. 301] make clear that it provides for general *in personam* jurisdiction grounded on presence, consent, domicile, and doing business."  *Popolizio v. Schmit*, No. 1:11-CV-1329, 2013 WL 316545, at *4 (N.D.N.Y. Jan. 28, 2013) (citation omitted).  "Under CPLR [] 301, a court has general personal jurisdiction over an individual if [their] conduct with New York is so continuous and systematic as to render [them] essentially at home in the forum state."  *Wallace Church & Co. v. Wayattzier, LLC*, No. 1:20-cv-01914, 2020 WL 4369850, at *4 (S.D.N.Y. July 30, 2020) (internal quotation marks and citation omitted).

Here, Montague has not consented to personal jurisdiction in New York, nor is he present or domiciled in New York.  (Compl. ¶ 4.)  Plaintiffs allege personal jurisdiction is valid over Montague because he was "doing business" in New York.  (Dkt. No. 10 at 13-17.)

8

"[A] non-resident individual . . . can be deemed present for jurisdictional purposes by virtue of doing business in [New York], even as to causes of action unrelated to the business done within the State." *Lancaster v. Colonial Motor Freight Line, Inc.*, 177 A.D.2d 152, 159  (1st Dep't 1992) (internal quotation marks omitted).  "To determine whether a defendant does business in the state, the [c]ourt must be able to say from the facts that the defendant is present in the [s]tate not occasionally or casually, but with a fair measure of permanence and continuity." *Wallace*, 2020 WL 4369850, at *4 (internal quotation marks and citation omitted). "[A] defendant's presence in New York for the purposes of general jurisdiction is evaluated at the time the complaint was filed."  *Id.* (internal quotation marks and citation omitted).  But, an individual "cannot be subject to jurisdiction under CPLR [] 301 unless he is doing business in New York as an individual rather than on behalf of a corporation."  *Id.* at *5 (citation omitted).

Plaintiffs allege that Montague was "doing business" in New York because "Montague had contracted to lease, and either actually leased or sold to Page, [a] truck-tractor . . . and . . . trailer," he "conduct[ed] transportation operations . . . [and] loading and freight services . . . on

behalf of Page," and, "since at least August 1, 2017, . . . Montague has . . . continuously and regularly receiv[ed] from Page . . . 80% of gross revenues derived from the use of the equipment he leased to Page."[6]  (Dkt. No. 10 at 15.)

Although transportation and freight services engaged in by Montague "on behalf of Page" do not subject Montague to personal jurisdiction under C.P.L.R. 301, *Wallace*, 2020 WL 4369850, at *4, Montague did lease or sell a truck-tractor and trailer to Page, a New York corporation, and has since received from Page eighty percent of gross revenues derived from the use of it.  (Dkt. No. 9, Attach 20.)  However, nothing before the court establishes how much revenue Montague received from this arrangement, or what percentage of his income comes from this arrangement.

Based on the information the court has before it, it cannot make a personal jurisdiction determination as to N.Y. C.P.L.R. 301 at this juncture,

_____

[6]  Defendants argue on reply that "[p]laintiffs' [o]pposition is not in fact . . . legitimate or proper . . . with respect to the lack of personal jurisdiction over . . . Montague" because it "does not rely upon the four-corners of the [c]omplaint as is but instead seeks to admit new documents and allegations which are not contained within his original pleadings or incorporated by reference."  (Dkt. No. 13, 16.)  However, defendants are mistaken and this is permissible.  *See Dorchester*, 722 F.3d at 86 ("[T]he district court [did not] err in considering materials outside the pleadings, as we have made clear that a district court may do so without converting a motion to dismiss for lack of personal jurisdiction into a motion for summary judgment." (citation omitted)).

without more specific facts as to the revenue Montague received from his arrangement with Page.  *Compare Overseas Media, Inc. v. Skvortsov*, 277 Fed.Appx. 92, 95 (2d Cir. 2008) (finding that defendant was not subject to personal jurisdiction under N.Y. C.P.L.R. 301 where 0.022% of its total revenue was attributable to New York), *with JetBlue Airways Corp. V. Helferich Patent Licensing, LLC*, 960 F. Supp. 2d 383, 394 (E.D.N.Y. 2013) (holding that the exercise of personal  jurisdiction over defendant under N.Y. C.P.L.R. 301 was warranted because defendant entered licensing agreements with companies in New York "and deriv[ed] substantial revenue benefit from, them").  However, based on the analysis below, an evidentiary hearing is not necessary, because the court finds that exercising personal jurisdiction of Montague under N.Y. C.P.L.R. 302 is proper.  *See infra* Part IV.A.2.

2.     *N.Y. C.P.L.R. 302*

Plaintiffs also allege that N.Y. C.P.L.R. 302 provides a basis for this court to exercise personal jurisdiction over Montague.  (Dkt. No. 10 at 17-21.)  N.Y. C.P.L.R. 302 states, in pertinent part: "[A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere

to supply goods or services in the state."  N.Y. C.P.L.R. 302 (a)(1).

There are two grounds where this statute applies: "where a defendant 'transacts any business' in the state and where a defendant 'contracts anywhere to supply goods or services' in the state."  *D&R Global Selections, S.L. v. Bodega Olegario Falcon Pineiro*, 29 N.Y.3d 292, 297 (2017) (citation omitted).  Under either ground, (1) "the defendant must have purposefully availed itself of the privilege of conducting activities within the forum State by either transacting business in New York or contracting to supply goods or services in New York" and (2) "the claim must arise from that business transaction or from the contract to supply goods or services."  *Id.* (internal quotation marks and citation omitted); *see Kreutter v McFadden Oil Corp.*, 71 N.Y.2d 460, 467 (1988) ("[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." (citations omitted)).

Under the second prong, plaintiff's claim must have an "articulable nexus" or "substantial relationship" with the defendant's transaction of business in New York.  *See D&R Global Selections*, 29 N.Y.3d at 298-99.

12

"At the very least, there must be a relatedness between the transaction and the legal claim such that the latter is not completely unmoored from the former." *Id.* at 299 (internal quotation marks and citation omitted); *cf. Bristol-Myers Squibb Co. v. Superior Court of Cal.*, 137 S.Ct. 1773, 1780 (2017) ("[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." (citation omitted)).  "[A]n articulable nexus or substantial relationship exists where at least one element arises from the New York contacts"; however, "[t]he nexus is insufficient where the relationship between the claim and transaction is too attenuated or merely coincidental." *D&R Global Selections*, 29 N.Y.3d at 299 (internal quotation marks and citations omitted).

Plaintiffs argue that N.Y. C.P.L.R. 302(a)(1) "is clearly applicable . . . because of the business arrangements Montague had with . . . [Page], a York domestic corporation," which show that "Montague has indeed contracted to supply goods and services in this state." (Dkt. No. 10      at 17-18.)  Plaintiffs specifically point to the facts that Montague contracted with Page, a New York corporation, to supply them with the truck-tractor and trailer; that Montague derived revenue from Page's use of this truck-

13

tractor trailer; and that it was this truck-tractor trailer that was involved in the collision with Afanassieva.  (*Id.* at 15, 17-18.)

This is sufficient to establish long-arm jurisdiction over Montague, as "one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities . . . were purposeful and there is a substantial relationship between the transaction and the claim asserted."  *Kreutter*, 71 N.Y.2d at 467 (citation omitted); *see Matel, Inc. v. Adventure Apparel*, No. 00 CIV. 4085, 2001 WL 286728, at *3 (S.D.N.Y. Mar. 22, 2001 ) (finding a single transaction where merchandise was shipped into New York sufficient to establish personal jurisdiction over defendant under N.Y. C.P.L.R. 302(a)(1)).

3.   *Due Process*

As proper service is not in dispute, (Dkt. No. 9, Attach 1 at 19), the remaining question is whether exercising personal jurisdiction over Montague "comports with constitutional due process principles."  *Licci*, 673 F.3d at 59-60.

Two requirements must be met in order to satisfy due process.  First, the defendant must have "certain minimum contacts with the forum such

that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Biofrontera AG v. Deutsche Balaton AG*, No. 18 Civ. 5237, 2020 WL 1489788, at *4 (S.D.N.Y. Mar. 27, 2020) (quoting *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002)) (internal quotation marks omitted).  This requirement is satisfied by the court's finding that Montague is subject to jurisdiction under C.P.L.R. 302(a)(1).  *See Excelsior College v. Frye*, 306 F.Supp.2d 226, 230 (N.D.N.Y. 2004) ("Since [plaintiff] established the requirements of [N.Y. C.P.L.R. 302], it likewise has [established] that defendants have sufficient minimum contacts with the state of New York to satisfy the first prong of the due process test.").

The second requirement of due process dictates that the assertion of jurisdiction must be "reasonable under the circumstances of the particular case." *Bank Brussels*, 305 F.3d at 129.  However, "[w]hile the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents a compelling case that the presence of some other considerations would render jurisdiction unreasonable." *Chloé*, 616 F.3d at 165 (internal quotation marks and citation omitted).  Here, defendants do

not contend that personal jurisdiction over Montague would violate due

process.  (*See generally* Dkt. No. 9, Attach. 1; Dkt. 13.)  Therefore the

exercise of personal jurisdiction over Montague under N.Y. C.P.L.R. 302 is

"reasonable under the circumstances" and does not violate due process.

**B.    Failure to State a Claim**

Defendants seek dismissal of the complaint because, under both

New York and New Jersey law, the action is untimely.  (Dkt. No. 9,

Attach. 1 at 4-16.)

Under New Jersey law "every action at law for an injury to the person

caused by the wrongful act, neglect[,] or default of any person within [New

Jersey] shall be commenced within two years next after the cause of any

such action shall have accrued."  N.J. Stat. Ann. § 2A:14-2(a).  In the

present case, the personal injury cause of the action accrued on April 5,

2018, and the deadline to file suit was two years later, on April 5, 2020.

(Compl. ¶ 9.)  However, as a response to the COVID-19 pandemic, a

series of executive orders were issued in New Jersey, which tolled the

statute of limitations for a period of fifty-six days between March 16, 2020

and May 10, 2020.  (Dkt. No. 9, Attach. 1 at 9-10.)  Accordingly, in order for

this action to be timely under New Jersey law, plaintiffs were required to

commence the action on or before June 1, 2020.[7]  However, plaintiffs filed

their complaint on September, 15, 2020, (*see generally* Compl.), and, thus,

under the New Jersey statute of limitations this action is untimely.

Plaintiffs argue that their complaint is not untimely, because New

York's three-year statute of limitations applies here.  (Dkt. No. 10 at 9-10.)

But, even under New York law, the action is still untimely.  Under New York

law "an action to recover damages for a personal injury [must be

commenced within three years]."  N.Y. C.P.L.R. 214(5).  However, New

York's borrowing statute provides:

> An action based upon a cause of action accruing
> without the state cannot be commenced after the
> expiration of the time limited by the laws of either
> state or the place without the state where the cause
> of action accrued, except that where the cause of
> action accrued in favor of a resident of the state the
> time limited by the laws of the state shall apply.

N.Y. C.P.L.R. 202.  Under this statute, "when a nonresident plaintiff sues

upon a cause of action that arose outside of New York, the court must

apply the shorter limitations period, including all relevant tolling provisions,

of either: (1) New York; or (2) the state where the cause of action accrued."

---

[7]  June 1, 2020 was the next business day after adding fifty-six days to the original
deadline to file (April 5, 2020).

*QED, LLC v. Faber Daeufer & Itrato, P.C.*, No. 20-CV-2767, 2021 WL

707073, at *4 (S.D.N.Y. Feb. 22, 2021) (quoting *Thea v. Kleinhandler*, 807

F.3d 492, 497 (2d Cir. 2015)) (other citation omitted).  Further, "[i]n

borrowing a foreign statute of limitations, New York courts must apply all

extensions and tolls applicable in the foreign state."  *Mail Am. Commc'ns,*

*Inc. v. World Healing Ctr. Church, Inc.*, No. 1:18-cv-08481, 2019 WL

8017846, at *7 (S.D.N.Y. Dec. 17, 2019) (citations omitted).

Plaintiffs allege in their complaint that Afanassieva's motor vehicle

accident occurred in New Jersey, and that both Afanassieva and Kukuyev

are "individual[s], citizen[s] and resident[s] of the State of New Jersey,

County of Middlesex."  (Compl. ¶¶ 5-6, 11-13.)  As such, under N.Y.

C.P.L.R. 202, New Jersey's two-year statute of limitations, along with the

tolling executive orders),would apply, and, thus, the complaint is untimely.

Plaintiffs seek to avoid this outcome in their response and its

supporting documents by alleging new facts not raised in their complaint,

seeking to establish Afanassieva as a resident of New York, and, thus,

subjecting her claim to New York's three-year statute of limitations.  (Dkt.

No. 10 at 11; Dkt. No. 10, Attachs. 5-6.)  Plaintiffs further request leave to

amend their complaint "[t]o the extent that the [c]ourt believes it is

necessary to elaborate, beyond the current [c]omplaint, as to the specifics of Afanassieva['s] . . . contacts with the forum state."[8]  (Dkt. No. 10 at 21-25.)  Specifically, plaintiffs allege Afanassieva worked in Brooklyn, paid taxes to the State and City of New York since 2010, and maintained a residence in New York 2013 to 2020 until she "vacated" due to the COVID-19 pandemic.  (*Id.* at 11; Dkt. No. 10, Attach. 5 ¶¶ 4-6, 11-12).

Regardless of whether the new facts plaintiffs raise in their opposition, declaration, and proposed amended complaint are properly before the court, plaintiffs do not establish that Afanassieva was a resident of New York at the time the cause of action accrued.

To determine whether a plaintiff is a New York resident under N.Y. C.P.L.R. 202 a court will consider "whether [plaintiff] has a significant connection with some locality in the State as the result of living there for some length of time during the course of a year."  *Antone v. General Motors Corp.*, 64 N.Y.2d 20, 30 (1984) (citation omitted).  Further, plaintiff "must stay there for some time and have the bona fide intent to retain the

---

[8]  Defendants argue that this is procedurally improper.  (Dkt. No. 13 at 2-3.)  The court need not address this argument, however, because, for the reasons stated below, even when considering the new facts raised in plaintiffs opposition and supporting documents, including their proposed amended complaint, (Dkt. No. 10 at 11; Dkt. No. 10, Attachs. 5-6), plaintiffs still fail to establish that Afanassieva is a resident of New York.

place as a residence for some length of time and with some degree of permanency," which "requires more stability than a brief sojourn for business, social[,] or recreational activities." *Katz v Siroty*, 62 A.D.2d 1011, 1012 (2d Dep't 1978) (citations omitted).  Finally, plaintiff must demonstrate New York residency at the time the cause of action accrued. *See Antone*, 64 N.Y.2d at 27-28 (1984).

Here, Afanassieva has not demonstrated a "significant connection" with the Brooklyn apartment she mentions in her declaration.  She does not claim that she owned, leased, or contributed in any way to, that apartment, but rather states that she worked in it as a home health aide and that she pays New York income taxes.[9]  (Dkt. No. 10, Attach. 5 at ¶¶ 3-4.)  Although she does state that, in 2013, as a result of becoming "very close" with her patient and daughter, they offered her a bedroom in the Apartment so she could "spend time between her shifts," (*id.* at ¶¶ 10, 12.), she does not state how frequently, if at all, she actually stayed in the apartment, (*see generally id.*).

---

[9]  The W-2 forms submitted by plaintiffs from 2010-2018, the time plaintiffs allege Afanassieva maintained New York Residency, list her Matawan, New Jersey address.  *(See generally* Dkt. 10, Attach. 6.)

This is insufficient to demonstrate New York residency.  *See Allen v Handszer*, 148 Misc.2d 334, 340-41 (N.Y. Sup. Ct. 1990) (holding that a plaintiff who "did not vote in New York, did not have her mail sent to New York . . . spent virtually all her time in New York, . . . worked [in New York] . . . , [and] shopped, ate[,] and slept '60 to 70 percent' of the time at the apartment of her boyfriend" was not a New York resident for purposes of N.Y. C.P.L.R. 202); *see also Martinez v. Semicevic*, 178 A.D.2d 228, 229 (1st Dep't 1991) ("[P]laintiff was not a resident of New York because "[h]is affidavit failed to explain how long [he] has resided at the Bronx address, or how [he] divides his time between [his] alleged residences, and is entirely unsupported by documentary evidence, such as a driver's license, voter's registration card[,] or utility bill"); *Neu v. St. John's Episcopal Hosp.*, 27 A.D.3d 538, 539 (2nd Dep't 2006) ("[P]laintiff was merely temporarily staying at a friend's apartment in Kings County at the time of the commencement of this action, but not 'with a bona fide intent to retain the place as a residence for some length of time and with some degree of permanency.'" (citation omitted)).

For the aforementioned reasons, under either New York or New Jersey law, the New Jersey statute of limitations applies to this claim and it

is time-barred.  Accordingly, defendants' motion to dismiss for failure to state a claim is granted.

## V.  <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that defendants' motion to dismiss (Dkt. No. 9) is **GRANTED IN PART** and **DENIED IN PART** as follows:

**GRANTED** with respect to defendants' request to dismiss the case for failure to state a claim upon which relief can be granted; and

**DENIED** in all other respects; and it is further

**ORDERED** that the Clerk close this case; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

September 29, 2021
Albany, New York

Gary L. Sharpe
U.S. District Judge